111 T.C. No. 16

UNITED STATES TAX COURT

INTERMET CORPORATION & SUBSIDIARIES, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8246-97.                    Filed December 8, 1998.

P is the common parent of an affiliated group of
corporations (the group) that included L during the
period from 1984 to 1993.  Pursuant to sec.
172(b)(1)(C), I.R.C., P seeks to carry back, to 1984,
certain expenses incurred by L during 1992.  For 1992
the group had a consolidated net operating loss as
defined in sec. 1.1502-21A(f), Income Tax Regs., and L
had separate taxable income as defined in sec. 1.1502-
12, Income Tax Regs.
    Held:  The expenses in issue do not qualify for
the 10-year carryback provided in sec. 172(b)(1)(C),
I.R.C., because the expenses do not qualify as
specified liability losses (SLL's) within the meaning
of sec. 172(f), I.R.C.  The expenses do not qualify as
SLL's within the meaning of sec. 172(f), I.R.C.,
because they were not taken into account in computing
the net operating loss for the year as required by sec.
172(f)(1), I.R.C.  Secs. 1.1502-21A(f), 1.1502-12,
Income Tax Regs.

Eric R. Fox, Hamish P.M. Hume, and Clifton B. Cates III, for petitioner.

Wilton A. Baker, Alfred C. Bishop, Jr., Steven J. Hankin, Richard Osborne, and Teri A. Culberton, for respondent.

WELLS, Judge:  Respondent determined a deficiency in petitioner Intermet Corporation's (Intermet) Federal income tax in the amount of $615,019 for 1984.  The deficiency arose out of respondent's disallowance of Intermet's specified liability loss carryback from 1992 to 1984.  After concessions by petitioner, the issues to be decided are:  (1) Whether, for purposes of the 10-year carryback provided in section 172(b)(1)(C), certain expenditures incurred by Lynchburg Foundry Co. (Lynchburg), a member of the Intermet consolidated group, qualify as "specified liability loss" within the meaning of section 172(f), and, if so, (2) to what extent the specified liability losses may be carried back by the consolidated group.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

## FINDINGS OF FACT

The parties submitted the instant case on the basis of fully stipulated facts and certain stipulated exhibits.  The parties'

stipulation of facts is incorporated in this opinion by reference and found accordingly.

Intermet, a Georgia corporation, had its principal office in Troy, Michigan, when it filed the petition in the instant case. Intermet is the common parent of an affiliated group of corporations (the group) that manufactures precision iron castings for automotive and industrial equipment producers. For calendar years 1984 through 1993, the group filed consolidated Federal income tax returns. During those years, all members of the group used the accrual method of accounting for both financial accounting and Federal income tax purposes. Lynchburg was a member of the group during each year from 1984 through 1993.

On its 1992 consolidated Federal income tax return, the group reported a consolidated net operating loss (CNOL) in the amount of $25,701,038. During October 1994, the group filed Form 1120X, Amended U.S. Corporation Income Tax Return, claiming a carryback to 1984 for specified liability losses incurred during 1992, in the amount of $1,227,973. During 1992, the group's CNOL exceeded the sum of the claimed specified liability losses.

Members of the group that claimed specified liability losses reported separate taxable income, as defined in section 1.1502-12, Income Tax Regs., and specified liability loss deductions as follows:

|  | Separate | Specified Liability Loss |
| Member | Taxable Income | Deductions |
| Lynchburg Foundry Co. | $3,940,085 | $1,126,467 |
| Intermet Corp. | 1,879,425 | 71,643 |
| Columbus Foundries, Inc. | 6,720,377 | 30,045 |
| Commercial & Precision Machining, Inc. | (3,123,021) | 49,818 |

In the notice of deficiency, issued on March 14, 1997, respondent disallowed the group's claimed carryback, except to the extent of $49,818, which was the amount of the specified liability loss deductions reported by Commercial & Precision Machining, Inc. Petitioner conceded the group's claimed carryback to the extent of $208,949.77, and the parties have stipulated that the remainder of the carryback, $1,019,205.23, is attributable solely to specified liability loss deductions claimed by Lynchburg during 1992.

The disallowed specified liability losses in issue consist of the following amounts paid by Lynchburg, during 1992, for State tax deficiencies, interest on those deficiencies, and interest on a Federal income tax deficiency:

| Disallowed Specified Liability Losses | Amount |
| State tax deficiencies | $717,617.00 |
| Interest on State tax liabilities | 299,412.63 |
| Interest on a Federal income tax deficiency | 2,175.60 |

The aforementioned State taxes and interest arose out of the State of Michigan's audit of Lynchburg's 1986, 1987, and 1988 Michigan Single Business Tax returns. During 1992, Lynchburg

paid the Michigan Single Business Tax deficiencies and the related interest.  The aforementioned interest on a Federal income tax deficiency arose out of an audit by the Internal Revenue Service (the Service) of the group's consolidated Federal income tax returns for 1987 and the resulting adjustment to Lynchburg's separate taxable income for that year.  During 1992, Lynchburg and the Service resolved their differences, and Lynchburg paid interest on its agreed upon 1987 Federal income tax deficiency.  During 1992, Lynchburg properly deducted the additional State taxes and interest it paid during that year.

## OPINION

Section 172(a) allows a "net operating loss deduction" for the aggregate of net operating loss carrybacks and carryovers to the taxable year.  The term "net operating loss" (NOL) is defined in section 172(c) to mean the excess of deductions allowed by chapter 1 over gross income.  Section 172(b) provides the carryback and carryover periods for NOL's.  Section 172(b)(1)(A) generally provides that the carryback period for an NOL is 3 years and that the carryover period is 15 years.[1]  Section 172(b)(1)(C) provides a special rule that extends the carryback period from 3 years to 10 years for specified liability losses.

---

[1]    Effective for taxable years beginning after Aug. 5, 1997, the carryback period for an NOL is 2 years and the carryforward period is 20 years.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1082(a), 111 Stat. 950.

The term "specified liability loss" (hereinafter SLL) is defined in section 172(f)[2], which states in part:

> SEC. 172(f).  Rules Relating to Specified Liability Loss.-- For purposes of this section--
>
> (1) In General.--The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable  year:
>
> \*        \*        \*        \*        \*        \*        \*
>
> (B) Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if--
>
> (i) in the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year
>
> \*        \*        \*        \*        \*        \*        \*
>
> A liability shall not be taken into account under subparagraph (B) unless the taxpayer used an accrual method of accounting throughout the period or periods during which the acts or failures to     act giving rise to such liability occurred.
>
> (2) Limitation.--The amount of the specified liability loss for any taxable year shall not exceed

---

[2]    The Omnibus Budget Reconciliation Act of 1990 (OBRA 1990), Pub. L. 101-508, sec. 11811(b), 104 Stat. 1388-532, combined former secs. 172(j) (relating to product liability losses) and 172(k) (relating to deferred statutory or tort liability losses) redesignating them sec. 172(f), effective for NOL's for taxable years beginning after Dec. 31, 1990, OBRA 1990, sec. 11811(c), 104 Stat. 1388-534.

the amount of the net operating loss for such taxable year.

The consolidated return regulations provide rules concerning the determination and use of NOL's in the consolidated return context.  Section 1.1502-11(a), Income Tax Regs., prescribes that consolidated taxable income is to be determined by taking into account the separate taxable income of each member of the group and, among other things, "Any consolidated net operating loss deduction".  Id.  Section 1.1502-21A(a), Income Tax Regs.,[3] provides that the CNOL deduction is equal to the aggregate of the CNOL carryovers and carrybacks to the taxable year.  In pertinent part, section 1.1502-21A(b)(1), Income Tax Regs., provides that the CNOL carryovers and carrybacks to the taxable year shall consist of any of the group's CNOL's that may be carried back or over to the taxable year under the provisions of section 172(b).

---

[3]     During 1996, the Department of the Treasury promulgated sec. 1.1502-21T, Temporary Income Tax Regs., 61 Fed. Reg. 33328 (June 27, 1996), generally effective for consolidated return years beginning on or after Jan. 1, 1997, sec. 1.1502-21T(g)(1), Temporary Income Tax Regs., 61 Fed. Reg. 33333 (June 27, 1986). Former sec. 1.1502-21, Income Tax Regs., was redesignated sec. 1.1502-21A, Income Tax Regs., generally effective for consolidated return years beginning before Jan. 1, 1997.  T.D. 8677, 1996-2 C.B. 119, 127.  In certain circumstances, a consolidated group may apply the temporary regulations to all consolidated return years ending on or after Jan. 29, 1991, and beginning before Jan. 1, 1997.  Sec. 1.1502-21T(g)(3), Temporary Income Tax Regs, 61 Fed. Reg. 33333 (June 27, 1986).  The consolidated return year in issue began before Jan. 1, 1997, and neither party contends that the temporary regulations apply in the instant case.  Accordingly, it is undisputed that sec. 1.1502-21A, Income Tax Regs., applies to the consolidated return year in issue.

Section 1.1502-21A(f), Income Tax Regs., provides that the CNOL

shall be determined by taking into account the separate taxable

income, "as determined under § 1.1502-12", of each member of the

group and certain enumerated consolidated items.[4]  Finally,

section 1.1502-12, Income Tax Regs., provides that the separate

taxable income of a member, "including a case in which deductions

exceed gross income", is determined, with certain modifications,

as if the member were not a member of the group.

_____

[4]     Sec. 1.1502-21A(f), Income Tax Regs., reads as follows:

        (f)  Consolidated net operating loss.  The
   consolidated net operating loss shall be determined by
   taking into account the following:

        (1)  The separate taxable income (as
        determined under § 1.1502-12) of each member of
        the group, computed without regard to any
        deduction under section 242;

        (2)  Any consolidated capital gain net income
        (net capital gain for taxable years beginning
        before January 1, 1977);

        (3)  Any consolidated section 1231 net loss;

        (4)  Any consolidated charitable
   contributions deduction;

        (5)  Any consolidated dividends received
        deduction (determined under § 1.1502-26 without
        regard to paragraph (a)(2) of that section); and

        (6)  Any consolidated section 247 deduction
        (determined under § 1.1502-27 without regard to
        paragraph (a)(1)(ii) of that section).

In the instant case, petitioner contends that the group properly carried back, to 1984,[5] the taxes and interest paid by Lynchburg during 1992. Petitioner argues that the taxes and interest in issue constitute SLL's within the meaning of section 172(f)(1)(B) because (1) the liabilities arose out of State and Federal law, (2) the act (or failure to act) giving rise to the liabilities occurred more than 3 years before 1992,[6] and (3) all members of the group used the accrual method of accounting throughout the period during which the acts or failures to act giving rise to the liabilities occurred. Additionally, petitioner contends that, pursuant to section 172(f)(2), the entire amount of the SLL's in issue may be carried back to 1984 because the amount claimed as SLL's for 1992 does not exceed the amount of the CNOL reported by the group for 1992. Section 172(f)(2) does not state whether the limitation provided by that section applies to each individual member of a consolidated group or to the group as a whole.[7] Petitioner contends, however, that

---

[5]    Notwithstanding the 10-year carryback period provided in sec. 172(b)(1)(C), SLL's may not be carried back to any taxable year beginning before Jan. 1, 1984. OBRA 1990, sec. 11811(b)(2)(B), 104 Stat. 1388-533.

[6]    Petitioner contends that the tax deficiencies and interest liabilities in issue arose simultaneously from the group's failure to file accurate State and Federal income tax returns.

[7]    If sec. 172(f)(2) is to be applied on a consolidated basis, all of the deductions in issue (that otherwise qualify as SLL's within the meaning of sec. 172(f)) would be eligible for the 10-
(continued...)

the limitation must be applied to the group as a whole because (1) under the consolidated return regulations an NOL in a consolidated group exists only on a consolidated basis, and (2) each separate member of a consolidated group is incapable of having its own NOL. Accordingly, petitioner concludes that section 172(f)(2) can be applied in the consolidated group context only by comparing the consolidated group's SLL[8] for the year with the consolidated group's CNOL for the year.

Respondent contends that petitioner is not entitled to carry back, to 1984, any of the deductions attributable to the taxes and interest paid by Lynchburg during 1992. Respondent argues that the taxes and interest in issue do not qualify for the 10-year carryback because they are not SLL's within the meaning of section 172(f)(1)(B). Specifically, respondent argues that section 172(f)(1)(B) was intended to apply to a "narrow class of liabilities" to which the taxes and interest in issue do not

---

[7](...continued)
year carryback because the group's consolidated net operating loss (CNOL) for 1992 exceeds the amount claimed as SLL's for 1992. If, however, sec. 172(f)(2) is to be applied on a separate company basis, none of the deductions in issue would be eligible for the 10-year carryback, whether or not they otherwise qualify as SLL's under sec. 172(f), because Lynchburg had separate taxable income rather than a loss for 1992.

[8]     Other members of the group claimed SLL's for 1992. Respondent allowed the carryback of some of the claimed SLL's in the notice of deficiency, and petitioner conceded that it is not entitled to carryback some of the claimed SLL's. The only SLL's that remain in issue are those claimed by Lynchburg for 1992.

belong.  See, e.g., <u>Sealy Corp. v. Commissioner</u>, 107 T.C. 177, 186 (1996).[9]  Additionally, respondent contends that, even if the deductions for the taxes and interest in issue qualify as SLL's under section 172(f)(1)(B), petitioner is not entitled to a carryback for those deductions because they were not taken into account in computing the group's CNOL for the year as required by section 172(f)(1).  Respondent asserts that the deductions in issue were not taken into account in computing the group's 1992 CNOL because they were exhausted by Lynchburg's 1992 separate income.

The first issue we consider is whether the deductions for the taxes and interest in issue were taken into account in computing the NOL for the year as required by section 172(f)(1). Lynchburg, with gross income in excess of allowable deductions, had no NOL for 1992.  See sec. 172(c).  Accordingly, none of the deductions in issue were taken into account in computing an NOL with respect to Lynchburg.  Accordingly, we must decide whether the deductions in issue were taken into account in the computation of the group's 1992 CNOL.

A review of section 172 and the consolidated return regulations reveals that a member with separate taxable income cannot contribute to the group's CNOL.  Although the consolidated

---

[9]    In light of our holding, <u>infra</u>, it is unnecessary for us to reach this issue.

return regulations speak in terms of a CNOL, see sec. 1.1502-21A, Income Tax Regs., it is quite clear that the CNOL is to be determined by taking into account the separate taxable income (or loss) of each member of the group.  See Norwest Corp. and Subs. v. Commissioner, 111 T.C. 105, 170 (1998); secs. 1.1502-21A(f), 1.1502-12, Income Tax Regs.  Under section 1.1502-21A(f), Income Tax Regs., the CNOL is computed by combining the separate taxable income or losses of the members and then adjusting for certain items that are taken into account on a consolidated basis.

Accordingly, under the regulations, the first step in determining the CNOL is to compute the separate taxable income (or loss) of each member.  Pursuant to section 1.1502-12, Income Tax Regs., the separate taxable income (or loss) of a member is computed, with certain modifications, as if the member were a separate corporation.  The computation of separate taxable income (or loss) under section 1.1502-12, Income Tax Regs., excludes certain items that are taken into account on a consolidated basis including:  NOL's, capital gains and losses, section 1231 gains and losses, charitable contributions, and the dividends received deduction.  See sec. 1.1502-12(h) through (l), (n), Income Tax Regs.  SLL's are not included among the modifications to the computation of separate taxable income under section 1.1502-12, Income Tax Regs.

The next step in the determination of the CNOL is to combine the separate taxable incomes and losses of the members. In the aggregation of the separate taxable income and losses, current losses of members offset current income of other members. Certain specified consolidated items are then taken into account. See sec. 1.1502-21A(f), Income Tax Regs. SLL's are not listed among the items which are to be taken into account on a consolidated basis under section 1.1502-21A(f), Income Tax Regs.

The consolidated return regulations specifically identify several items that are to be treated on a consolidated basis. Those regulations, however, do not use the term "consolidated specified liability loss" or incorporate such a concept by directing that SLL's be treated on a consolidated basis. Consequently, we conclude that SLL's are not to be taken into account separately as consolidated items for purposes of computing the group's CNOL. See, e.g., Amtel Inc. v. United States, 31 Fed. Cl. 598, 602 (1994), affd. without published opinion 59 F.3d 181 (Fed. Cir. 1995) (court rejected the concept of a "consolidated product liability loss" under the consolidated return regulations). Instead, SLL's are to be netted against the member's items of income in the computation of separate taxable income (or loss) under section 1.1502-12, Income Tax Regs.

When allowable deductions exceed gross income, the result is an NOL, sec. 172(c), and the excess may be carried backward or

forward to offset income in other years, sec. 172(a) and (b).  No provision, however, allows the same deduction to be used against income of both current and noncurrent years.  Simply put, once a deduction is absorbed by income from the current year, it is no longer available as an NOL to be carried backward or forward. Under the consolidated return regulations, SLL's are netted, in the first instance, against the current income of the individual member and then against the income of the group.  Secs. 1.1502-21A, 1.1502-12, Income Tax Regs.  If the SLL's are totally absorbed by the current income items of the member in the computation of its separate taxable income under section 1.1502-12, Income Tax Regs., as in the instant case, those deductions are exhausted and cannot be used again by the group, as SLL's, against income in carryback years.[10]  In effect, a member that has separate taxable income within the meaning of section 1.1502-12, Income Tax Regs., has no SLL to be carried back because the SLL expenses have been used to offset the member's income currently.  Consequently, the SLL expenditures of a member with

---

[10]  A consolidated group with a CNOL would, however, be eligible to carry back the SLL deductions of a member that has separate loss, within the meaning of sec. 1.1502-12, Income Tax Regs.  In that case, the SLL deductions would be absorbed neither by the individual member's gross income, in the computation of separate taxable income (or loss) under sec. 1.1502-12, Income Tax Regs., nor by the separate taxable incomes of the other members in the aggregation of the member's separate taxable incomes and losses under sec. 1.1502-21A(f)(1), Income Tax Regs.

separate taxable income, computed under section 1.1502-12, Income Tax Regs., are not taken into account in the computation of the consolidated group's CNOL as required by section 172(f)(1).

Lynchburg had separate taxable income after taking into account its allowable deductions, including the deductions for the taxes and interest in issue. Accordingly, we conclude that the deductions for the taxes and interest in issue do not qualify as SLL's, within the meaning of section 172(f), because they were not taken into account in the computation of the group's CNOL as required by section 172(f)(1).

Petitioner contends that the consolidated return regulations require a unified computation of the group's NOL at the consolidated level. Accordingly, petitioner contends, the sum of the deductions attributable to SLL's of all the members of the group are used to calculate the group's CNOL regardless of whether any particular member has positive or negative separate taxable income. The sum of such deductions, petitioner argues, limits the amount of the group's CNOL that may be carried back 10 years. In essence, petitioner argues that SLL's should be considered solely on a consolidated basis.

Congress delegated broad authority to the Commissioner to establish regulations for filing consolidated returns. Sec. 1502. In order to qualify for treatment as a consolidated group, all members must agree to be bound by the consolidated return

regulations as promulgated by the Commissioner.  Sec. 1501.  As we see it, petitioner's position ignores those regulations. Section 1.1502-21A(f), Income Tax Regs., provides the exclusive method for computing the NOL of a consolidated group.  The computation of the CNOL under section 1.1502-21A(f), Income Tax Regs., begins with the computation of each member's separate taxable income under section 1.1502-12, Income Tax Regs. Accordingly, the CNOL is not computed purely on a consolidated basis.  Moreover, as discussed supra at 12, SLL's are not treated on a consolidated basis under the consolidated return regulations.  Similarly, there is no provision in the Code for a consolidated SLL.[11]  As neither the Code nor the regulations direct that SLL's are to be treated on a consolidated basis, and, in light of the general principle that deductions are construed narrowly, INDOPCO, Inc., v. Commissioner, 503 U.S. 79, 84 (1992); Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974), we must reject petitioner's position.  See, e.g., Amtel Inc. v. United States, supra at 602.

Petitioner contends that its position is in harmony with the underlying purpose of the consolidated return regulations, which is to tax an affiliated group of corporations as a single

---

[11]    By contrast, Congress has directed single entity treatment for purposes of sec. 172 with respect to corporate equity reduction interest loss as defined in sec. 172(h).  See sec. 172(h)(4)(C).

economic business unit.  See <u>Amorient, Inc. v. Commissioner</u>, 103
T.C. 161, 168 (1994).  Those regulations, however, do not treat a
consolidated group on a pure single entity basis for purposes of
computing the CNOL.  See secs. 1.1502-21A(f), 1.1502-12, Income
Tax Regs.  Because Lynchburg had no separate loss under section
1.1502-12, Income Tax Regs., Lynchburg had no SLL.  Rather,
Lynchburg's SLL deductions were offset by its 1992 gross income.
Because Lynchburg's SLL deductions were absorbed by its current
income, those deductions were not taken into account in computing
the group's CNOL.  Accordingly, the group's CNOL did not include
any SLL attributable to Lynchburg.  Where a group has deductions
in excess of gross income, the group cannot characterize part of
its CNOL as SLL merely because a member had deductions of a type
that would otherwise qualify as SLL.[12]

Petitioner contends that <u>Amtel Inc. v. United States</u>, <u>supra</u>,
and <u>Norwest Corp. and Subs. v. Commissioner</u>, <u>supra</u>, are readily
distinguishable from the instant case.[13]  Although neither case

---

[12]   As discussed <u>infra</u>, because we conclude that the deductions
for the taxes and interest in issue were not taken into account
in the computation of the group's CNOL, we do not consider
whether the deductions for taxes and interest otherwise qualify
as SLL within the meaning of sec. 172(f).

[13]   Petitioner also cites an unpublished Order from the United
States District Court for the Western District of North Carolina
in <u>United Dominion Indus., Inc. v. United States</u>, 82 A.F.T.R.2d
98-5037, 98-2 U.S.T.C. par. 50527 (W.D.N.C. 1998), as support for
its position.  On facts similar to the instant case, the court in
<u>United Dominion</u> examined the interplay between sec. 172(j),
<span style="float:right">(continued...)</span>

is factually on point with the instant case,[14] we cited both cases in our analysis above because they offer insight into the operation of the consolidated return regulations as they relate to the NOL of a consolidated group.

In light of our holding that the deductions for the taxes and interest in issue do not qualify as SLL's within the meaning of section 172(f), because they were not taken into account in the computation of the group's CNOL as required by section 172(f)(1), it is unnecessary to reach the parties' arguments concerning the application of section 172(f)(1)(B) and (f)(2) to the instant case.

---

[13](...continued)
I.R.C. 1954, and the consolidated return regulations.  The court found that the parent of a consolidated group could carry back, to a consolidated year, product liability losses (PLL's), as defined in sec. 172(j), I.R.C. 1954, attributable to a member of the group that had separate taxable income.  Sec. 172(j), I.R.C. 1954, defined a PLL as the lesser of the NOL or the sum of the deductions attributable to expenses related to product liability. The court concluded that because the individual member's PLL's were less than the group's CNOL, the group was entitled to carry back the member's PLL deductions.  United Dominion is clearly distinguishable from the instant case because sec. 172(j), I.R.C. 1954, predecessor to sec. 172(f)(1)(A), did not contain the language in sec. 172(f)(1) which limits SLL's to those that are taken into account in the computation of the NOL for the year.

[14]    Amtel Inc. v. United States, 31 Fed. Cl. 598, 602 (1994) affd. 59 F.3d 181 (1995), concerned the carryback of product liability losses as defined in sec. 172(j), predecessor to sec. 172(f)(1)(A), to a separate return year.  Norwest Corp. and Subs. v. Commissioner, 111 T.C. 105, 170 (1998), concerned the carryback of a consolidated group's CNOL attributable to bank member's bad debts under sec. 172(b)(1)(L).

We have considered the parties' remaining arguments and conclude that they are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.